

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Lauren E. Perry*
*Assistant United States Attorney*
*Lauren.Perry@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-48393
MAIN: 410-209-4800
FAX: 410-962-0716

October 3, 2017

David Walsh-Little, Esq.
Michael Oppenheimer, Esq.
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street, 9th Floor
Baltimore, Maryland 21201

Re:   Plea Agreement in United States v. Zachary Lee, Criminal No. MJG-17-013

Dear Mr. Walsh-Little:

This letter confirms the plea agreement, together with the sealed supplement, which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **October 11, 2017**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Counts One and Two of the Indictment, which charges him with Conspiracy to Commit Offenses Against the United Sates (Conspiracy to Provide False Information), in violation of 18 U.S.C. § 371, and False Information and Hoax, in violation of 18 U.S.C. § 1038(a)(1)(B). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Conspiracy to Provide False Information (Count One)

a. Two or more people conspired and agreed to violate a law of the United States, in this case, 18 U.S.C. Section 1038(a)(1)(B) (as outlined in Count Two below);

1

      b.    The defendant knowingly joined the conspiracy knowing of its unlawful purpose;

      c.    That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

<u>False Information and Hoax (Count Two)</u>

      a.    The defendant intentionally conveyed false or misleading information under circumstances in which such information may reasonably have been believed;

      b.    That information indicated that an activity had taken, was taking, or would take place that would constitute a violation of Title 18 chapters 40 (explosives) and 44 (firearms);

      c.    And serious bodily injury resulted.

### Penalties

3.    The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Count One: 5 years' imprisonment, a 3 year period of supervised release, and a fine of $250,000 and for Count Two: 20 years' imprisonment, a 3 year period of supervised release and a fine of $250,000. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.    If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. The base offense level is **12**, pursuant to U.S.S.G. § 2A6.1(a)(1).

    b. The offense level is increased by **4** levels because the offense resulted in a substantial expenditure of funds to respond to the offense pursuant to U.S.S.G. § 2A6.1(b)(4)(B).

    c. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the Court determinates that a 2 level increase under U.S.S.G. § 3B1.3 applies, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Accordingly, the final offense level is 13.**

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

4

### Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **24 months** of imprisonment in the custody of the Attorney General is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the defendant would not be able to withdraw his plea.

### Obligations of the Parties

10. At the time of sentencing, the parties will request that the Court sentence the Defendant to a sentence within the stipulated sentence range of **24 months** imprisonment. After the sentence is imposed, this Office will move to dismiss the open counts of the Indictment pending against the Defendant including Count Three of the Indictment which charges the Defendant with Aggravated Identity Theft and carries a mandatory minimum term of imprisonment of two years.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including conduct involved in the counts of the Indictment that this Office has agreed to dismiss after the sentence is imposed.

### Restitution

12. The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

13. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

14. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

15. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Waiver of Appeal

16. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. If the Court accepts the plea agreement and imposes a sentence within agreed-upon range of **24 months** imprisonment in the custody of the Bureau of Prisons, the Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

1. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any

offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C).

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Lauren E. Perry
Zachary A. Myers
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/5/17
Date

_____
Zachary Lee

I am Zachary Lee's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/5/17
Date

_____
David Walsh-Little, Esq.

7

## ATTACHMENT A - Stipulated Facts

*The United States and Defendant stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. The parties further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

**ZACHARY LEE ("LEE")**, age 25, was a resident of Catonsville, Maryland.

"Swatting" is a term used to describe the act of utilizing deception and trickery to entice an emergency service provider into dispatching an emergency response based on a false report of an ongoing critical incident.

On February 14, 2015, a friend of **LEE's** was assaulted over a drug debt owed to T.D. On February 17, 2015, **LEE**, using the name br00talicious, skype messaged with Robert Walker McDaid ("McDaid"), who was using the name meowobikinz. The following messages were exchanged:

| Author/Profile Name | Name | Skype Message |
|---|---|---|
| br00talicious | LEE | I have someone I need sw@tted |
| br00talicious | LEE | this time its foreal, and its a green light |
| meowobikinz | McDAID | Ok |
| meowobikinz | McDAID | u got the address? |
| br00talicious | LEE | ima get it now 1 sec |
| br00talicious | LEE | yo this kid like will go straight to jail, he sells drugs out of his apartment |
| br00talicious | LEE | he got someone else to do his dirty work on my friend |
| br00talicious | LEE | so it's game over for this little nigger |
| meowobikinz | McDAID | loool |
| meowobikinz | McDAID | hes fucked |
| meowobikinz | McDAID | i got police to viss' house 3 times on valentines day |
| meowobikinz | McDAID | this shits so easy now |
| br00talicious | LEE | <Posted a link to identifying information for T.D. found on Maryland Judiciary Case Search, which included his address, sex, height, weight, and date of birth> |
| br00talicious | LEE | Yoo make sure |
| br00talicious | LEE | you say nothing about me |
| br00talicious | LEE | this cant connect back to me, he will have no idea who did it |
| br00talicious | LEE | he will just get swatted and not know why |
| br00talicious | LEE | how do i delete skype chat history off of my computer |
| meowobikinz | McDAID | Ok |
| meowobikinz | McDAID | il do it |
| meowobikinz | McDAID | when im up |
| br00talicious | LEE | can I listen in on the call after I get on VPN? |
| meowobikinz | McDAID | or tomorrow |
| meowobikinz | McDAID | im getting ready for bed |
| br00talicious | LEE | can we get it done today |
| meowobikinz | McDAID | im nakerd from work |
| meowobikinz | McDAID | Lol |
| br00talicious | LEE | any chance of getting it done tonight lol |
| br00talicious | LEE | i want that sweet revenge for what he did to my friend |
| meowobikinz | McDAID | yeah |

| Author/Profile Name | Name | Skype Message |
|---|---|---|
| meowobikinz | McDAID | youll get it |

When McDaid asked for T.D.'s address, **LEE** sent a link to Maryland Judiciary Case Search for one of T.D.'s prior arrests. The link included T.D.'s personal identifying information including, among other things, his name, address, and date of birth.

On February 18, 2015, **LEE** sent a private Facebook message to McDaid asking him to "talk on skype." Approximately 45 minutes later, at approximately 4:00 pm, a male with a British accent called the Maryland Coordination and Analysis Center's Terrorism Hotline (MCACTH). The caller said that his name was "Tyrone" and that he had a loaded gun, several bags of plastic explosives, and had taken three hostages. The caller demanded $15,000 in cash be delivered in a red bag to a specific address and apartment in Ellicott City, MD. The caller stated that he would start executing the hostages in 15 minutes if his demands were not met. If his demands were met, the caller stated that he would drop the hostages in three separate states. The address provided was the address of T.D. The call was placed by McDaid while **LEE** was listening on the line. All of the information provided was false.

After the call, MCACTH contacted Howard County Police Department who responded to T.D's address with their tactical/hostage negotiation team. Police surrounded the apartment and evacuated neighboring apartments. The police also contacted 2 individuals, T.D.'s cousin and her daughter, and safely removed them from the apartment. Police observed T.D. inside the apartment and made contact with him. During negotiation, T.D. agreed to exit the apartment, however he did not comply with law enforcement commands. When T.D. exited the apartment for a second time, he was shot in the chest and then face with rubber rounds.

T.D. suffered significant injuries to his face and chest, including bruised lungs, a fractured rib, and numerous broken bones to the left side of his face. He was transported to the hospital where he underwent approximately 3 facial reconstructive surgeries.

This "swatting" caused over 40 officers to respond to T.D.'s home and remain there for over 2.5 hours and cost the Howard County Police Department over $10,000.

Immediately after this call, **LEE** posted to skype that he was "making a new skype" and did, in fact, create a new skype name. **LEE** also posted to Facebook: "Love my team."

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

10/5/17
_____
Date

_____
Zachary Lee

I am Zachary Lee's attorney. I have carefully reviewed the statement of facts with him.

10/5/17
_____
Date

_____
David Walsh-Little, Esq.

2